IN THE COURT OF COMMON PLEAS
SUMMIT COUNTY, OHIO

| | |
|---|---|
| RICHARD KUTUCHIEF, ESQ., <br> c/o Friedman and Gilbert <br> 55 Public Square, Suite 1055 <br> Cleveland, Ohio 44113, <br><br> Plaintiff, <br><br> -vs- <br><br> CAPTAIN RICHARD ARMSEY, <br> c/o Summit County Sheriff <br> 53 University Ave. <br> Akron, Ohio 44308, <br><br> -and- <br><br> DEPUTY SOMBATI, <br> c/o Summit County Sheriff <br> 53 University Ave. <br> Akron, Ohio 44308, <br><br> Defendants. | CASE NO: _____ <br><br> JUDGE: _____ <br><br> COMPLAINT <br><br> (JURY DEMAND ENDORSED HEREON) |

## INTRODUCTION

1.  On election day, November 3, 2015, Plaintiff Richard Kutuchief, Esq., a local politician and longtime resident of Coventry Township, went out to vote and was out for a motorcycle ride to enjoy a beautiful fall morning. He was running for the office of Township Trustee, and was checking his signs, and doing some last-minute campaigning. He was also taking photographs of the scenery along his ride. His carefree morning was abruptly halted when Defendant Armsey of the Summit County Sheriff's office stopped, searched and seized him without reasonable suspicion or probable cause, accusing him of wrongdoing because he was taking photographs.

1

2. During the course of this illegal seizure, without provocation or cause, Defendant Armsey grabbed Plaintiff, threw him to the ground, pulled him up and searched him, removed him to the vehicle, and slammed his upper body onto the car before handcuffing Plaintiff and placing him under arrest for the false and malicious charges of Obstructing Official Business and Resisting Arrest, both of which were eventually terminated in his favor.

3. Defendant Deputy Sombati was called to the scene of this illegal stop, and participated in the acts alleged herein.

4. This complaint seeks damages arising out of the trauma, injuries and damages suffered by Plaintiff as a result of the Defendants' brutality and illegal actions.

5. Plaintiff seeks damages and other relief under federal law for false arrest, excessive force, malicious prosecution and under state law for willful, reckless and wanton conduct, intentional infliction of emotional distress and malicious prosecution.

6. Plaintiff seeks compensatory and punitive damages against Defendant Armsey and Defendant Sombati in addition to costs and all additional relief this court deems appropriate and to which Plaintiff is entitled under the law.

## JURISDICTION AND VENUE

7. At all times mentioned herein, Defendants Armsey and Sombati were employed by the Summit County Sheriff's Office and each was acting in his capacity as an officer for the Summit County Sheriff's Office under the color of state law.

8. This action is brought pursuant to *42 U.S.C. Section 1983*, as well as the Fourth and Fourteenth Amendments to the Constitution of the United States and pendent claims arising under the laws of the State of Ohio.

9. Venue is appropriate as this cause of action arose in Summit County.

**Sandra Kurt, Summit County Clerk of Courts**

## PARTIES

10. Plaintiff Richard Kutuchief, Esq. is a resident of the State of Ohio.

11. Defendant Captain Richard Armsey, and Defendant Deputy Sombati at all times relevant herein, were employed as officers by the Summit County Sheriff's Office, and were acting under color of state law. Each is being sued in his individual as well as official capacity.

## FACTS

12. Plaintiff Richard Kutuchief, a 64-year old man, is a well-respected attorney and local politician in Coventry Township, Ohio, where he raised his children and lives with his wife.

13. Defendant Richard Armsey is an officer with Internal Affairs with the Summit County Sheriff's office.

14. Defendant Deputy Sombati is a deputy assigned to patrol in the Green, Ohio area.

15. Defendant Richard Armsey had not been on patrol for the past approximately 13 years as of November 3, 2015.

16. On November 3, 2015, Defendant Armsey was not assigned to patrol or assigned duties as a patrol officer. He was coming from the Green Sheriff's post, passing through Coventry Township, Ohio on his way to Arlington Street to get his vehicle serviced.

17. On November 3, 2015, election day, Plaintiff was on the official election ballot as a candidate for the elected office of Coventry Township Trustee for the Coventry Township Board of Trustees.

18. Kutuchief had campaigned for several months before the election and had in excess of 125 political signs in Coventry Township, had distributed 2,000 oversized postcards to residents, and had various ads in the local newspapers.

19. It was a beautiful fall day. Plaintiff decided to start the morning with two of his favorite hobbies – motorcycle riding and photography. An avid longtime photographer, he took his camera and went out for a motorcycle ride around 7:45 a.m.

20. While driving around the township, Plaintiff snapped some photographs of scenery around him, including at several voting locations and various landscape scenes.

21. Plaintiff was stopped at the stop sign at the intersection of Conlin Drive and Killian Road in Coventry Township, Summit County, Ohio, when he observed in his rear-view mirror that a person in a black car behind him was motioning for him to come back and talk to him.

22. Since Plaintiff was campaigning at the time, Plaintiff approached the car and introduced himself. Plaintiff thought that this may be an opportunity to get out the vote, one vote at a time.

23. The black car was unmarked and did not show any signs of being a police car. Defendant Armsey was inside the car in plain clothes.

24. When Plaintiff approached the black car, he believed he was approaching a civilian; he had no idea that Defendant was a law enforcement officer at the time.

25. The person inside the car, now known to be Defendant Armsey, immediately and aggressively demanded information about the photographs Plaintiff had been taking that morning.

26. Plaintiff told Defendant Armsey that it was a beautiful fall day to take photographs. Plaintiff then introduced himself by his full name and told Defendant about his candidacy for trustee, and pointed to his political sign located at the corner in said intersection a few feet away.

4

**Sandra Kurt, Summit County Clerk of Courts**

27. Plaintiff asked Defendant Armsey to identify himself but he refused.

28. Instead, Defendant Armsey again demanded to know about the subjects of Plaintiff's photography that morning.

29. Eventually Defendant Armsey identified himself as a Lieutenant at the Summit County Sheriff and ordered Plaintiff to pull over.

30. Plaintiff immediately complied with Defendant's order after he identified himself as a law enforcement officer and pulled his motorcycle over into a driveway across the street as instructed.

31. Plaintiff took out his cell phone and said, "Just so there is no misunderstanding I'm going to video this."

32. In response, Defendant Armsey immediately knocked the phone out of Plaintiff's hand to the ground, grabbed Plaintiff's hand and arm, and brought it behind Plaintiff's back while performing a "leg-sweep" on Plaintiff, tripping Plaintiff and slamming him to the ground.

33. Defendant proceeded to seize Plaintiff's other arm, tearing his leather coat, and jump on top of Plaintiff's body.

34. At no time did Plaintiff resist arrest or obstruct Defendant Armsey in any way.

35. Defendant Armsey gripped Plaintiff's hands behind his back, pulled him up and searched him, then led him to the Defendant's car and roughly slammed Plaintiff's upper body onto the car causing him great pain and distress.

36. Defendant Armsey reached into his car, retrieved his handcuffs, and handcuffed Plaintiff behind his back.

37. Defendant Armsey did not have any probable cause or reasonable suspicion to justify the stop and arrest of Plaintiff.

**Sandra Kurt, Summit County Clerk of Courts**

38. Defendant Armsey then ordered Plaintiff to sit on the ground. Plaintiff explained that he was unable to sit on the ground while handcuffed due to a hip problem and instead asked if he could sit inside the Defendant's car.

39. In spite of this reasonable request, Defendant pushed Plaintiff, who was wearing a suit, to the ground.

40. Plaintiff was terrified due to Defendant Armsey's inexplicably aggressive demeanor.

41. Plaintiff suffered pain and injury to his leg and about his body as a result of Defendant Armsey's excessive force.

42. Around this time, Defendant Deputy Sombati arrived on the scene.

43. Defendant Armsey and Defendant Sombati talked amongst themselves by Plaintiff's motorcycle.

44. Defendant Sombati failed to use his training and experience to end the unlawful restraint of Plaintiff.

45. Defendant Sombati commenced the process of and ordered the tow of Plaintiff's motorcycle.

46. Defendant Armsey walked back over to Plaintiff and advised Plaintiff he was under arrest for obstructing official business.

47. Defendant Sombati walked over and baselessly accused Plaintiff of stalking his political opponents in the trustee's race, accused him of looking through windows of houses, and otherwise demeaned, threatened and insulted Plaintiff, who was in handcuffs and in great distress.

6

48. Both Defendant Armsey and Deputy Sombati were intimidating and taunting Plaintiff, both aggressively pronouncing that Plaintiff "was going to jail."

49. Defendant Armsey learned that Plaintiff is a lawyer from some source other than Plaintiff and began a tirade against lawyers, claiming lawyers always think they can control everything and get their own way, causing Plaintiff, who was in handcuffs, to fear an elevated level of aggression and hostility from Defendants Armsey and Sombati.

50. Plaintiff explained to Defendant Armsey that he was concerned about the election that day, that he had two appearances in the Summit County Court of Common Pleas that morning and that the judges were waiting for him. He stated that he would gladly appear in court on a summons; there was no need to book and jail him.

51. Defendant Armsey ignored Plaintiff, and denied Plaintiff's request to make a phone call to inform the court that he could not appear that morning.

52. Throughout the encounter, Defendant Armsey searched Plaintiff multiple times.

53. Defendant Armsey transported Plaintiff in his car to the Coventry Sheriff's office, which was directly adjacent to the Coventry Township Administration Building and the Coventry Township town hall.

54. Once inside, Defendant Armsey searched Plaintiff two more times, taking all of his belongings and camera, tossing them on the table next to where Plaintiff was ordered to sit.

55. Plaintiff again requested permission to use the phone to contact the court due to the court appearances scheduled for the morning. Again, Defendant Armsey refused Plaintiff's request.

56. Defendant Armsey noticed that Plaintiff was in great distress and asked Plaintiff if he was ok. Plaintiff replied that he was in great pain.

7

57. Defendant Armsey called the Coventry Township Fire Department EMS who came to the office and evaluated Plaintiff for his injuries, noting that Plaintiff's blood pressure was greatly elevated to 240/138, alarming Plaintiff even further.

58. Throughout the encounter, Defendant Armsey accused Plaintiff of taking pictures of houses and demanded to know why.

59. Eventually Defendant Armsey and Plaintiff reviewed the digital photographs on Plaintiff's camera together.

60. Defendant Armsey did not find any incriminating photographs on the camera and returned it to Plaintiff.

61. Defendant Armsey completed a summons for Plaintiff, charging him with Obstructing Official Business in violation of O.R.C. 2921.32 and Resisting Arrest in violation of O.R.C. 2921.33.

62. While working on the summons, Defendant Armsey said that he knew the resisting charge would be dismissed at court, but he was charging Plaintiff with it anyway. He also threatened Plaintiff with raising the degree of the obstruction charge to a felony.

63. Defendant Armsey and Defendant Sombati caused Plaintiff's motorcycle to be towed, forcing Plaintiff to pay $168.00 to retrieve it from the towing company.

64. In support of Plaintiffs' arrest and prosecution, Defendant Armsey filled out and filed false and incomplete affidavits and police reports and made false statements to the prosecutors affirming his false reports.

65. Defendant made these false and misleading statements and pursued false charges against Plaintiff in an attempt to cover up his own misconduct.

66.     Plaintiff was compelled to hire legal counsel and appear in court to defend himself against these false charges.

67.     On March 5, 2016, after hearing all of the evidence, a jury found Plaintiff not guilty of all charges.

68.     On April 1, 2016, the Court entered a judgment Nunc Pro Tunc amending the prior judgment entry to indicate that the Obstructing Official Business charge was dismissed with prejudice upon a motion to suppress/dismiss and the Resisting charge was resolved by the jury, therefore Plaintiff was discharged from jeopardy and the prosecution was terminated in his favor.

69.     As a result of the Defendants' unjustifiably aggressive and threatening behavior, Plaintiff suffered and continues to suffer, *inter alia*, extreme pain, deep bruising, muscle sprains and strains, severe emotional distress, fear, anxiety, reputational damage and incurred legal and medical bills.  His injuries and damages are continuing and permanent.

70.     Defendant Armsey and Defendant Sombati acted with legal malice.

### FIRST CLAIM FOR RELIEF
**(42 U.S.C. § 1983 Fourth Amendment – Defendant Armsey)**

71.     Plaintiff incorporates each and every preceding paragraph as if fully rewritten herein.

72.     Defendant Armsey acted under color of law at all relevant times and deprived Plaintiff of his constitutional rights in violation of Title 42 U.S.C. § 1983.

73.     Defendant Armsey deprived Plaintiff of his right to be free from unreasonable seizure by seizing his person, searching and arresting him without lawful privilege, against his consent, and without probable cause, and subjecting him to the unjustified use of excessive force in violation of the Fourth and Fourteenth Amendments of the United States Constitution.

9

74. Defendant Armsey acted intentionally, willfully, and/or in a reckless, wanton, gross or unreasonable manner.

75. As a direct and proximate result of the Defendant's conduct, Plaintiff suffered and continues to suffer injury and damages as detailed in this Complaint.

## SECOND CLAIM FOR RELIEF
### (42 U.S.C. § 1983
### Malicious Prosecution – Defendant Armsey)

76. All of the foregoing paragraphs are incorporated as though fully set forth here.

77. In the manner described more fully above, Defendant Armsey instigated, influenced or participated in the actions and decision to prosecute Plaintiff, knowing there was no probable cause for the criminal prosecution.

78. On April 1, 2016, the charges were terminated in his favor.

79. Defendant Armsey accused Plaintiff of criminal activity knowing those accusations to be without genuine probable cause, and Defendant Armsey made statements to prosecutors with the intent of exerting influence to institute and continue the judicial proceedings.

80. Furthermore, in the manner described more fully above Defendant Armsey and Defendant Sombati deliberately engaged in arbitrary and conscience-shocking conduct that contravened fundamental canons of decency and fairness and violated Plaintiff's substantive due process rights under the Fourteenth Amendment as well as the Fourth Amendment to the United States Constitution.

81. Defendant Armsey was acting under color of law and within the scope of his employment when each took these actions.

82. As a direct and proximate cause of Defendant Armsey's misconduct, Plaintiff suffered and continues to suffer injury and damages as set forth in this Complaint.

10

### THIRD CLAIM FOR RELIEF
### (State Claim Against Defendant Armsey – Malicious Prosecution)

83. Plaintiff incorporates each and every preceding paragraph as if fully rewritten herein.

84. Defendant Armsey accused Plaintiff of criminal activity knowing those accusations to be without genuine probable cause, made false statements to prosecutors and wrote false reports with the intent of exerting influence on, and to institute and continue, the judicial proceedings against Plaintiff.

85. Defendant Armsey caused Plaintiff to be improperly subjected to judicial proceedings for which there was no probable cause.

86. These judicial proceedings were instituted and continued maliciously, resulting in Plaintiff's wrongful prosecution and the consequent injuries set forth above.

87. The misconduct described in this Claim was undertaken intentionally, and with malice, willfulness and with reckless indifference to the rights of others.

88. On April 1, 2016, the charges were terminated in Plaintiff's favor.

89. As a direct and proximate cause of Defendant Armsey's misconduct, Plaintiff suffered and continues to suffer injury and damages as set forth in this Complaint.

### FOURTH CLAIM FOR RELIEF
### (State Claim Against Defendants Armsey and Sombati- Negligence -Willful, Wanton, and Reckless Conduct)

90. Plaintiff incorporates by reference each and every preceding paragraph as if fully rewritten herein.

91. Defendants Armsey and Sombati disregarded the public trust granted to their positions as law enforcement officers and acted in an intentional, willful, wanton, negligent and/or malicious manner, failed to exercise due care, and acted with a malicious purpose and/or

11

in bad faith and/or in a willful and/or wanton and/or reckless manner while engaged in police functions and activities, within the scope of their employment, including the excessive and unreasonable use of force against Plaintiff causing him pain and injury, falsely arresting and maliciously prosecuting Plaintiff, and intentionally causing him extreme emotional distress.

92. Defendants Armsey and Sombati, as set forth herein, engaged in negligent, reckless and/or willful and/or wanton conduct such that they are not entitled to the immunities set forth in O.R.C. § 2744.01 *et seq*.

93. Such negligent, reckless, wanton, and/or willful conduct directly and proximately caused the Plaintiff to suffer and continue to suffer the pain, injuries and damages set forth in this Complaint.

### FIFTH CLAIM FOR RELIEF
**(State Claim Against Defendants Armsey and Sombati– Intentional Infliction of Emotional Distress)**

94. Plaintiff incorporates each and every preceding paragraph as if fully rewritten herein.

95. The acts and conduct of Defendant Armsey and Defendant Sombati, as set forth above, were extreme and outrageous. Said Defendants' actions were rooted in an abuse of power or authority, and they were undertaken with intent to cause, or were in reckless disregard of the probability, that this conduct would cause severe emotional distress to Plaintiff, as is more fully alleged above.

96. As a direct and proximate result of Defendant Armsey's and Defendant Sombati's actions, Plaintiff suffered and continues to suffer physical injury and severe emotional distress as set forth more fully above.

**Sandra Kurt, Summit County Clerk of Courts**

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgement against Defendant Armsey and Defendant Sombati, jointly and severally, for:

(A) Compensatory and consequential damages for all the injuries identified in an amount to be determined by the Court and jury in excess of $25,000.00;

(B) Punitive damages in an amount to the be determined at trial for the willful and malicious conduct of Defendant Armsey and Defendant Sombati;

(C) Attorneys' fees and the costs of this action and other costs that may be associated with this action; and

(D) Any and all other relief that this Court deems equitable, necessary and just.

**A JURY TRIAL IS REQUESTED TO HEAR THIS MATTER.**

/s/ Sarah Gelsomino
SARAH GELSOMINO (0084340)
TERRY H GILBERT (0021948)
JACQUELINE GREENE (0092733)
Friedman and Gilbert
55 Public Square, Suite 1055
Cleveland, OH 44113-1901
Telephone: 216-241-1430
Facsimile: 216-621-0427
sgelsomino@f-glaw.com
tgilbert@f-glaw.com
jgreene@f-glaw.com